**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| J.D. POWER,<br><br>          Plaintiff,<br><br>v.<br><br>CHIME FINANCIAL, INC.,<br><br>          Defendant. | **COMPLAINT**<br><br>No. 1:26-cv-04656<br><br>**JURY TRIAL DEMANDED** |

Plaintiff J.D. Power ("J.D. Power"), for its Complaint against Defendant Chime Financial, Inc. ("Chime"), alleges as follows:

**PRELIMINARY STATEMENT**

1.     J.D. Power is a globally recognized consumer intelligence, data analytics, and market-research company whose name and trademarks are synonymous with independent, rigorous, and trusted consumer research.

2.     This action arises from Chime's unauthorized and willful misuse of J.D. Power's name, trademarks, and consumer trust to support sweeping advertising claims that J.D. Power has not endorsed and that its data does not support, including claims that Chime is "America's #1 Choice for Banking" and holds a purported "#1 ranking based on J.D. Power survey."

3.     Chime's claim is false and misleading. The J.D. Power study on which Chime relies did not measure overall consumer preference, satisfaction, loyalty, or primacy in banking. It is a churn benchmarking study that tracks new account openings across eight consumer account types: checking, credit card, savings/money market, personal investment, HELOC/HELoan, personal loan, auto loan, and employer-based retirement. Chime had the most new account openings only in checking. It did not lead in any of the other seven categories. Chime's selective reliance on a

1

single favorable metric to support a broad "America's #1 Choice for Banking" tagline ignores the data in the very same study that contradicts the claim, as well as other J.D. Power research showing that Chime's competitors have more total customers and accounts.

4.    J.D. Power never conferred any "#1 ranking" on Chime and never endorsed Chime's advertising claim, nor did it agree with the statement that Chime was "America's #1 Choice for Banking." Chime nevertheless launched and maintained a widespread, multi-channel advertising campaign invoking "J.D. Power," references to a "J.D. Power survey," and similar formulations to lend credibility to its superiority claim.

5.    Chime's conduct also breaches the parties' written agreement. The parties' Master License and Services Agreement ("MSA") and related Orders (collectively, the "Agreement") strictly limit Chime's use of J.D. Power materials to internal business purposes and prohibit any use of J.D. Power's trademarks absent express authorization in an Order. No such authorization exists.

6.    Despite receiving notice from J.D. Power in November 2025 that Chime's conduct was unauthorized and outside the scope of the parties' agreement, Chime not only failed to cure but expanded its misuse of J.D. Power's name and data across additional advertising channels, press releases, SEC-furnished materials, and a trademark application to the United States Patent and Trademark Office ("USPTO").

7.    Chime continues to disseminate the improper claims across high-visibility channels, and Chime's incomplete, delayed, and noncommittal removal efforts neither cure the violations nor moot the need for injunctive relief.

8.      Chime's conduct continues to cause significant and irreparable harm to J.D. Power, including damage to its reputation, erosion of its licensing business, and interference with its relationships with customers and licensees.

9.      Accordingly, J.D. Power brings this action for breach of contract, trademark infringement, false endorsement, false advertising, and related claims, and seeks injunctive relief, damages, disgorgement of profits, attorneys' fees, and other appropriate relief.

## THE PARTIES

10.     Plaintiff J.D. Power is a Delaware corporation with its principal place of business in Troy, Michigan.

11.     Defendant Chime is a Delaware corporation with its principal place of business in San Francisco, California.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction under 28 U.S.C. §§ 1331, 1338, and 15 U.S.C. § 1121 because this action arises under the Lanham Act, 15 U.S.C. §§ 1114 and 1125.

13.     The Court has supplemental jurisdiction over state-law claims under 28 U.S.C. § 1367.

14.     This Court has personal jurisdiction over Chime because Chime directs challenged advertising and marketing into this District, causing injury here, and Chime consented to jurisdiction through the parties' Agreement, which provides that "[a]ny dispute that arises under or relates to this Agreement (whether in contract, tort or both) commenced by either party shall be resolved in state or federal court in New York, New York, and the parties . . . irrevocably waive any jurisdictional and/or right they may otherwise have to cause any such action or proceeding to be brought or tried elsewhere."

15.     Venue is proper in this District under 28 U.S.C. § 1391 because Chime is subject to personal jurisdiction in this District and based on the parties' Agreement to litigate in New York state or federal court.

### J.D. POWER'S BUSINESS & LICENSING PROGRAM

16.     J.D. Power is a global leader in consumer intelligence, market research, data analytics, and performance benchmarking.

17.     J.D. Power has been providing its services for more than fifty years, since its founding in 1968 by James David "J.D." Power III.

18.     J.D. Power conducts independent survey-based research across numerous industries, including financial services, and publishes syndicated reports, benchmarking tools, dashboards, and related analytics products.

19.     J.D. Power's products are used by clients worldwide, including in the State of New York.

20.     In the financial services sector, J.D. Power conducts studies relating to banking, direct banking, digital banking, payments, lending, and related categories.

21.     Companies, consumers, and investors routinely rely on J.D. Power's studies and rankings as independent, objective measures of performance in the marketplace.

22.     J.D. Power also operates a well-established licensing program through which qualifying companies, subject to J.D. Power's approval and licensing terms, may obtain the right to use J.D. Power's name, marks, and certain study results in advertising, with J.D. Power closely monitoring usage to ensure accuracy and avoid any misleading claims associated with its marks.

23.     J.D. Power's licensing program is a significant source of revenue.

4

24.     J.D. Power's strict control over advertising use is essential to preserving the credibility, objectivity, and commercial value of its brand and research.

25.     Companies may not extract or repurpose isolated data points from J.D. Power studies to support broader advertising claims, and any use of the J.D. Power name or study results in advertising requires J.D. Power's prior approval for accuracy and compliance with its licensing standards.

26.     Only top-performing brands in qualifying J.D. Power studies are eligible to obtain a license to use J.D. Power marks and study results in advertising award claims, and such licenses are offered exclusively to subscribing clients and subject to J.D. Power's approval and strict conditions.

27.     Unauthorized or misleading use of the J.D. Power name erodes consumer trust in the independence and reliability of J.D. Power's research and surveys and creates confusion regarding endorsement.

28.     Unauthorized uses also diminish the exclusivity and value of authorized licenses and impair J.D. Power's ability to monetize its research and brand.

### J.D. POWER'S TRADEMARKS

29.     J.D. Power owns valuable intellectual property, including common-law rights and multiple federally registered trademarks incorporating the J.D. Power name (the "J.D. Power Marks").

30.     By way of example, J.D. Power owns at least the following federal registrations:

   a. U.S. Registration No. 1,619,003 for "J.D. POWER AND ASSOCIATES" for goods and services in Class 035, registered October 23, 1990.[1]

---

[1] *See* https://tmsearch.uspto.gov/search/search-results/73829921.

b.  U.S. Registration No. 2,486,839 for "J.D. POWER" for goods and services in Classes 009, 035, 041, registered September 11, 2001.[2]

c.  U.S. Registration No. 6,921,891 for "J.D. POWER" for goods and services in Classes 009, 016, 035, 036, 041, 042, registered December 13, 2022.[3]

31.  True and correct copies of these registrations are attached as **Group Exhibit A**.

32.  J.D. Power's Marks are among J.D. Power's most valuable assets.

33.  The J.D. Power Marks are distinctive, valid, subsisting, and enforceable and, where applicable, incontestable

34.  J.D. Power has used the J.D. Power name and marks continuously in interstate commerce for decades.

35.  The "J.D. POWER" name refers to the company's founder, James David "J.D." Power III, and, through long and exclusive use, has become synonymous with independent, objective, and authoritative consumer research.

36.  For decades, companies across industries have prominently cited J.D. Power rankings in national advertising campaigns —dating back to at least the 1980s and 1990s, including during Super Bowl broadcasts— and consumers routinely rely on J.D. Power studies, awards, and rankings as independent measures of marketplace performance.

37.  The J.D. Power brand today carries substantial recognition and weight across financial services and other industries.

---

[2] *See* https://tmsearch.uspto.gov/search/search-results/75841233.

[3] *See* https://tmsearch.uspto.gov/search/search-results/97081533.

38.     J.D. Power's methodology further distinguishes its studies from other consumer ratings because they are based on independent and unbiased feedback from a representative sample of verified product owners, rather than self-selected online reviews.

39.     Through longstanding use, promotion, and licensing, the J.D. Power Marks have acquired substantial goodwill, distinctiveness, and commercial value and are widely recognized as identifiers of independent, reliable consumer research.

40.     J.D. Power has invested substantial time, effort, and financial resources in developing, promoting, and maintaining the goodwill associated with the J.D. Power Marks and its research products.

41.     J.D. Power retains exclusive control over the commercial use of its marks and authorizes third-party use—including in advertising—only through express written permission and licensing terms

## CHIME'S BUSINESS

42.     Chime is a publicly traded financial technology company that was founded in 2012.

43.     Chime is not a bank.

44.     Chime offers consumer banking-related products and services through partner banks.

45.     Chime's bank partners are The Bancorp Bank, N.A. and Stride Bank, N.A.

46.     Chime markets its services directly to consumers through mass-market channels, including its website, social media, blog content, press releases, paid advertising, mobile application marketplace listings, investor-facing materials, and SEC-furnished materials.

47.     Chime publicly positions itself as a competitor to traditional banks for primary consumer banking relationships.

48.    The claim "America's #1 Choice for Banking" has been central to Chime's marketing and brand positioning.

49.    Chime's website is www.chime.com.

50.    Chime's website is accessible in New York and across the nation.

51.    Chime uses several social media accounts, accessible in New York and across the nation, to promote its business and products.

**THE PARTIES' AGREEMENT**

52.    On or about October 26, 2025, J.D. Power and Chime entered into an Order governed by the MSA.

53.    On or about December 23, 2025, the parties executed a second Order extending the parties' Agreement.

54.    True and correct copies of the MSA and Orders are attached as **Group Exhibit B**.

55.    Section 4(a) of the MSA states that Chime only receives "a limited, non-exclusive, non-sublicensable, non-transferable, and revocable license to use" J.D. Power materials "solely for" Chime's "internal business" purposes.

56.    Section 4(b) of the MSA states that Chime "may not directly or indirectly use or display" J.D. Power's "trademarks or service marks . . . unless expressly provided in an Order."

57.    Section 4(c) of the MSA states J.D. Power retains "all right, title, and interest" in "any intellectual property rights" in the licensed J.D. Power materials.

58.    Section 4(e) of the MSA states that the licensed J.D. Power materials "may be used and accessed solely by" Chime's "employees" and that Chime may "not disclose, release, distribute, or deliver" the licensed J.D. Power materials, "or any portion thereof, to third parties without" J.D. Power's "prior written consent."

59.     The "Service Terms" in the Orders likewise specify "Internal Permitted Use" only and restrict access "solely" by Chime's "employees."

60.     No Order or written consent authorizes Chime to use J.D. Power's name, trademarks, data, or research in advertising, marketing, press releases, investor communications, SEC filings, or any other external commercial context.

61.     To the contrary, the parties' Agreement forecloses such use absent express authorization, which does not exist.

## THE J.D. POWER STUDY & ITS FINDINGS

62.     Among other things, J.D. Power publishes a Financial Services Churn Data & Analytics report, a proprietary research product that tracks consumer banking behaviors, including new account openings and related trends. *See* https://www.jdpower.com/business/financial-services-churn-data-analytics.

63.     The Q3 2025 Financial Services Churn Data & Analytics report was based on responses from 4,158 U.S. consumers surveyed between August 19, 2025 and September 30, 2025 who had opened a new checking account within the prior 90 days. *See* https://www.jdpower.com/business/resources/financial-services-churn-data-and-analytics-report-october-2025; *see also* **Exhibit C** (JD Power Financial Services Churn Data & Analytics Q4 2025 Topline Industry Summary).

64.     Among the defined respondent set, Chime accounted for approximately 13% of new checking-account openings. *See id.*

65.     The checking-account portion of the study measured new checking-account openings during a limited period among a defined set of respondents and tracked institutions. *See id.*

9

66.     It did not measure overall market-wide consumer preference or primary banking relationship.

67.     It did not designate any institution as '#1' overall or across banking.

68.     The study therefore cannot support—and contradicts—a market-wide claim that Chime is "America's #1 Choice for Banking."

69.     The study is narrower still because approximately 52% of the account openings reflected in the study were additional accounts, rather than new or replacement primary relationships—undermining any claim that consumers broadly selected Chime as their primary bank or "choice for banking." *See* https://www.jdpower.com/business/resources/customers-are-opening-new-accounts-and-quietly-making-them-their-primary.

70.     The study also showed that, in certain segments of the respondents ("Mass Affluent" and "Affluent"), Bank of America and Chase capture the highest percentages of new checking account openings. *See* **Exhibit C**.

71.     Further, the savings-account portion of the study showed that Chase outpaced Chime in new savings account openings. *See* *id.*; *see also* https://www.jdpower.com/business/resources/financial-services-churn-data-and-analytics-report-october-2025.

72.     J.D. Power also publishes other banking-related studies, including satisfaction studies. *See, e.g.,* https://www.jdpower.com/business/press-releases/2026-us-direct-banking-satisfaction-study.

73.     No J.D. Power study designates Chime as "America's #1 Choice for Banking" or supports such a sweeping, market-wide superiority claim.

74. In J.D. Power's 2026 U.S. Direct Banking Satisfaction Study, which measures consumer satisfaction with online-only banking providers, Chime is ranked below other peers in both the checking and savings categories.

## CHIME'S WRONGFUL CONDUCT

### *Chime's Use of J.D. Power Marks to Promote "#1" Claims*

75. Beginning no later than November 2025, Chime used "J.D. Power," references to a "J.D. Power survey," and similar statements in connection with consumer- and investor-facing superiority claims, including "America's #1 Choice for Banking" and "#1 ranking based on J.D. Power survey."

76. Chime disseminated those claims across its homepage and other website pages, social media, blog content, press releases, paid digital advertising, application-store listings, and investor-facing and SEC-furnished materials.

77. Representative examples of this advertising campaign are included in **Group Exhibit D**.

78. As of the filing of this Complaint, "America's #1 Choice for Banking" appears as the principal headline on Chime's website. *See* https://www.chime.com/.

79. A screenshot of Chime's website is shown below:



80. The only purported substantiation for that headline is "#1 ranking based on J.D. Power survey." *See id.*

81. A website visitor can access "Disclosures" only by clicking a small information icon button, which opens a popup stating that, "In a quarterly J.D. Power study conducted via consumer survey between August and September 2025, more new checking accounts were opened through Chime than any listed financial institution or financial partner." *See id.*

82. A screenshot of that popup from Chime's website is shown below:



83. The "Disclosures" are misleading.

84. The "Disclosures" do not disclose that:

    a. J.D. Power had not conferred any "#1 ranking,"

    b. Chime accounted for only approximately 13% of new checking-account openings within the defined respondent set,

    c. Approximately 52% of those openings were additional accounts, or

    d. Other J.D. Power banking studies do not support Chime's broad claim.

85. The net impression of Chime's advertising is false and misleading.

12

86.    A reasonable consumer encountering the headline "America's #1 Choice for Banking" would understand it as a broad, unqualified claim of market-wide consumer preference and superiority in banking.

87.    The fine-print and click-through disclosures do not cure the deception; they contradict, rather than meaningfully qualify or clarify, the headline claim.

88.    Chime amplified the same message in other public-facing channels.

89.    For example, Chime repeated these claims in multiple public statements, including:

a.    In its Q3 2025 earnings release, where Chime's CEO stated that "Month after month, more mainstream Americans are choosing Chime as their primary financial partner.[4]

b.    In its Q4 2025 earnings release furnished to the SEC, describing Chime as "America's #1 Choice for Banking" with a footnote referencing a J.D. Power survey.[5]

c.    In its Q1 2026 earnings release furnished to the SEC, again describing Chime as "America's #1 Choice for Banking," stating that more Americans were opening bank accounts with Chime than any other financial institution, and asserting that "AMERICA'S #1 CHOICE FOR BANKING is a Trademark of Chime Financial, Inc."[6]

---

[4] *See* https://finance.yahoo.com/news/chime-reports-third-quarter-2025-210500927.html.

[5] *See* https://www.sec.gov/Archives/edgar/data/1795586/000179558626000004/ex991q425.htm.

[6] *See* https://www.sec.gov/Archives/edgar/data/1795586/00017955862600035/ex991q126.htm.

13

d.  In an April 2, 2026 press release titled "America's #1 Choice for Banking Expands Its Lead with the Launch of Chime Prime," again invoking J.D. Power to support the claim.[7]

90.    Chime likewise has used this message in blog content, on LinkedIn, and in YouTube advertising, all while invoking J.D. Power as the supposed basis for Chime's superiority claim.

91.    Then, on February 27, 2026, Chime filed with the USPTO an application (Serial No. 99674108) for "AMERICA'S #1 CHOICE FOR BANKING" in connection with banking services.[8]

92.    On May 8, 2026, after J.D. Power had repeatedly objected to Chime's conduct and after the parties had executed the Order limiting Chime to internal use of J.D. Power's materials, Chime filed a sworn Amendment to Allege Use in the application, claiming a first use in commerce date of February 25, 2026.

93.    In support of that Amendment, Chime submitted specimens consisting of pages captured from chime.com and chimeprime.com, including a chime.com page that prominently displays "America's #1 Choice for Banking" together with the statement "#1 ranking based on J.D. Power survey."

94.    Both the application and the May 8, 2026 Amendment to Allege Use rely on advertising that references J.D. Power as supposed substantiation.

95.    Chime has never been authorized by J.D. Power to use J.D. Power's marks or research in connection with that application or any trademark application.

---

[7] *See* https://investors.chime.com/node/7616/pdf.

[8] *See* https://tmsearch.uspto.gov/search/search-results/99674108.

14

96.     Chime's use of the J.D. Power name is not merely source-identifying.

97.     Chime's use of the J.D. Power Marks is not limited to accurately identifying J.D. Power or its research.

98.     Chime uses the J.D. Power name to confer credibility and create a false impression of certification and endorsement on sweeping superiority claims that J.D. Power did not make and does not support.

99.     Chime's use of J.D. Power's name and marks does not constitute nominative fair use.

### *Chime's Willfulness*

100.    J.D. Power first notified Chime of its unauthorized conduct no later than November 14, 2025.

101.    J.D. Power personnel thereafter reiterated to Chime J.D. Power's objections and demands for corrective action on multiple occasions.

102.    For example, on January 27, 2026, J.D. Power expressly instructed Chime that:

a.    "there is no award to license for" new accounts openings "because it is not CX or satisfaction based"; and

b.    Chime cannot "blast a claim saying (for example) 'Chime is the best company at getting new business.'"

103.    Despite such communications, Chime expanded its use of the J.D. Power Marks and increased the prominence and scope of its advertising claims.

104.    In May 2026, J.D. Power, through outside counsel, delivered formal cease-and-desist letters demanding that Chime immediately cease all infringing activities, remove all references to J.D. Power, and withdraw its pending trademark application.

105.    Chime did not comply with J.D. Power's demands.

106.    Instead, Chime responded through outside counsel, disputing J.D. Power's positions and refusing to immediately cease the misconduct or withdraw its application.

107.    Despite repeated notices and deadlines from J.D. Power, Chime has continued to disseminate the challenged claims across its website, advertising, and investor-facing materials, and, at most, undertook limited, partial removals that have not cured the violations.

### *Chime's Claims are False and Misleading*

108.    Chime's claim that it is "America's #1 Choice for Banking" is false or, at minimum, misleading.

109.    The underlying J.D. Power study did not designate Chime as "#1," did not rank institutions on an overall basis, and did not measure overall consumer preference, satisfaction, loyalty, or primacy in banking.

110.    The underlying J.D. Power study measured new checking account openings during a limited period among a defined set of institutions.

111.    Chime's characterization of that study as a "#1 ranking" is therefore false on its face.

112.    Chime's advertising is further misleading because it presents the superiority claim as objective, empirical, and independently validated by J.D. Power, conveying a message of third-party endorsement.

113.    Consumers in the financial services market routinely associate the J.D. Power name with independent rankings, awards, and third-party validation.

114.    By pairing the claim "America's #1 Choice for Banking" with the J.D. Power name, Chime falsely suggests endorsement, certification, or validation that does not exist.

*Harm to J.D. Power*

115.    Chime's unauthorized use of the J.D. Power Marks and its false advertising has caused and continues to cause substantial harm to J.D. Power.

116.    Chime's conduct misappropriates the commercial value of J.D. Power's brand and licensing program by allowing Chime to trade on J.D. Power's credibility without authorization or payment, including by avoiding the licensing fees and permissions review process required for lawful advertising use.

117.    Chime's misconduct also undermines J.D. Power's ability to license its name, marks, and data to other market participants by devaluing authorized uses and eroding the exclusivity of its licensing program.

118.    In addition, Chime's use of the J.D. Power name in connection with unsupported superiority claims damages J.D. Power's reputation as an independent and reliable source of consumer research by associating its brand with claims it did not make and does not endorse. This diminishes trust in J.D. Power's studies and impairs its relationships with customers, subscribers, and licensees.

119.    These injuries to J.D. Power include a loss of control over J.D. Power's marks and reputation and are ongoing, difficult to quantify, and not fully compensable by monetary damages.

*Injury to the Public*

120.    Chime's conduct also harms the public.

121.    Chime's conduct misleads consumers and creates the false impressions that an independent third party has ranked, endorsed, or validated Chime as "America's #1 Choice for Banking."

17

122. The net impression of Chime's advertising is that its claimed superiority has been objectively measured and independently confirmed by J.D. Power, when it has not.

123. These misrepresentations are material because they are likely to influence consumer decisions regarding the selection of banking and financial services.

124. Consumers have a legitimate interest in being free from false or misleading superiority claims and from mistaken beliefs that trusted third-party organizations such as J.D. Power have endorsed or validated a company when they have not.

125. This consumer deception directly undermines J.D. Power's business model by eroding the integrity and exclusivity of its name as a trusted, independent source of validated rankings that companies must license for use in advertising.

### *Chime's Conduct is Ongoing*

126. Chime has not fully ceased its wrongful conduct and continues to display or disseminate the offending claims across multiple channels.

127. Chime's counsel has informed J.D. Power's counsel that removal will require a prolonged, multi-week or longer timeline, and for certain advertising channels, more than 30 days.

128. Those communications confirm that Chime's misconduct will persist absent judicial intervention.

129. Chime's partial and belated modification efforts neither eliminate the ongoing harm nor moot J.D. Power's claims for injunctive relief.

130. Limited or piecemeal removals do not cure the violation, particularly where the core "#1 Choice for Banking" claim continues to appear in prominent, consumer-facing placements.

## FIRST CLAIM FOR RELIEF

### (Breach of Contract)

131. J.D. Power repeats the allegations in each of the foregoing paragraphs as if fully set forth herein.

132. The MSA and related Order are a valid and enforceable Agreement.

133. J.D. Power performed its obligations under the Agreement.

134. Chime materially breached the Agreement by, among other things, breaching Section 4(b) of the MSA (prohibiting use of J.D. Power trademarks absent authorization) and Section 4(e) and the Orders' "Internal Permitted Use" provisions (restricting use and disclosure to internal purposes only).

135. Chime materially breached the Agreement by, among other things:

   a. Using J.D. Power's trademarks in consumer-facing and investor-facing materials without authorization;

   b. Using J.D. Power's data and materials for external, commercial, and promotional purposes rather than solely for internal business use; and

   c. Disclosing, distributing, publishing, or otherwise making J.D. Power materials available to third parties without consent.

136. Any purported reliance on publicly available J.D. Power data does not authorize Chime's conduct and cannot override the Agreement's express restrictions on trademark use and external dissemination.

137. J.D. Power provided notice of breach, and the contractual cure period expired without cure.

138.    Chime's breaches were material and, despite notice, were not cured and have continued.

139.    Chime's breaches trigger Chime's "Indemnity" obligations under Section 7(b) of the MSA, under which Chime agreed to "defend, indemnify, and hold [J.D. Power] harmless."

140.    As a direct and proximate result, J.D. Power has suffered and will continue to suffer damages, including harm to its reputation, erosion of its licensing business, interference with customer and licensee relationships, and diminished value of its intellectual property.

141.    J.D. Power is also entitled to injunctive relief.

## SECOND CLAIM FOR RELIEF

### (Trademark Infringement Under 15 U.S.C. § 1114(1))

142.    J.D. Power repeats the allegations in each of the foregoing paragraphs as if fully set forth herein.

143.    J.D. Power owns valid and enforceable trademark rights in the J.D. Power Marks, including federally registered marks.

144.    Chime used J.D. Power Marks in commerce, without authorization, in connection with the advertising and promotion of its services.

145.    Any purported reliance on publicly available J.D. Power data does not authorize Chime's use of the J.D. Power Marks or render that use non-infringing.

146.    Chime's use of J.D. Power Marks is likely to cause confusion, mistake, or deception as to the affiliation, association, or sponsorship of Chime's services by J.D. Power, including by falsely implying that J.D. Power validated or endorsed Chime's alleged "#1" status.

147.    Chime's conduct does not constitute nominative fair use.

148. Chime's infringement has been willful and in conscious disregard of J.D. Power's rights.

149. As a direct and proximate result of Chime's infringement, J.D. Power has suffered and will continue to suffer damages, including loss of goodwill, reputational harm, and economic injury, and is entitled to injunctive relief, damages, Chime's profits, enhanced damages, and attorneys' fees under 15 U.S.C. § 1117.

## THIRD CLAIM FOR RELIEF

### (False Endorsement, Unfair Competition, and False Designation of Origin

### Under 15 U.S.C. § 1125(a)(1)(A))

150. J.D. Power repeats the allegations in each of the foregoing paragraphs as if fully set forth herein.

151. Chime has used "J.D. Power," "J.D. Power survey," and similar references in connection with its nationwide advertising and promotional campaign, including its claim that it is "America's #1 Choice for Banking."

152. Chime's use goes beyond merely identifying J.D. Power as the source of underlying research.

153. Chime exploits the commercial strength and recognition of the J.D. Power Marks to confer false credibility and third-party validation on claims that J.D. Power did not make and does not support.

154. As a result of Chime's conduct, consumers are likely to be confused, mistaken, or deceived into believing that J.D. Power has endorsed or validated Chime as the "#1 Choice for Banking," when it has not.

21

155.    Chime's conduct does not constitute nominative fair use because its use of the J.D. Power Marks is not necessary to describe the underlying data, is not limited to what is reasonably required for such identification, and conveys a false message of endorsement and validation.

156.    Chime's unauthorized use exploits consumer recognition of J.D. Power as an independent evaluator and wrongfully appropriates the goodwill associated with the J.D. Power Marks.

157.    Chime's conduct constitutes false endorsement, unfair competition, and false designation of origin in violation of 15 U.S.C. § 1125(a)(1)(A).

158.    J.D. Power has suffered and will continue to suffer monetary damages and irreparable harm and is entitled to injunctive and monetary relief.

**FOURTH CLAIM FOR RELIEF**

**(False Advertising Under 15 U.S.C. § 1125(a))**

159.    J.D. Power repeats the allegations in each of the foregoing paragraphs as if fully set forth herein.

160.    In commercial advertising and promotion, Chime has made false and misleading descriptions and representations of fact, including that Chime is "America's #1 Choice for Banking," that Chime holds a "#1 ranking based on J.D. Power survey," and that more Americans are opening bank accounts with Chime than any other financial institution.

161.    These statements are literally false or, at minimum, misleading because:

    a.    The J.D. Power study measured only new checking account openings in a limited period among a defined set of institutions, not overall consumer preference, satisfaction, loyalty, or primacy across banking;

    b.    The study did not designate Chime as "#1" and did not confer any "#1 ranking";

22

    c.   Chime's advertising implies a broad, independently validated superiority claim that the data does not support; and

    d.   Chime's "opening bank accounts" formulation overstates the scope of the data, which covered checking accounts only.

162.    Chime has disseminated these false and misleading statements widely through its website, paid advertising, social media, blog content, press releases, and investor-facing and SEC-furnished materials.

163.    The misrepresentations are material because they are likely to influence consumer purchasing decisions by invoking J.D. Power's reputation for independent, authoritative rankings and research.

164.    As a direct and proximate result of Chime's false and misleading statements, J.D. Power has been and will continue to be injured, including through reputational harm, loss of control over its brand, and interference with its licensing relationships.

165.    Chime's conduct has been willful, and Chime continued and expanded its misleading use of J.D. Power's name and data after receiving notice that its conduct was unauthorized and misleading.

166.    J.D. Power is entitled to injunctive relief, damages, disgorgement of profits, and attorneys' fees under 15 U.S.C. § 1117.

## FIFTH CLAIM FOR RELIEF

### (New York Common Law Trademark Infringement)

167.    J.D. Power repeats the allegations in each of the foregoing paragraphs as if fully set forth herein.

168.    J.D. Power owns valid and enforceable rights in the J.D. Power Marks, which have acquired substantial goodwill and distinctiveness through long and continuous use.

169.    Chime, without authorization, used the J.D. Power Marks in commerce in connection with the advertising, promotion, and marketing of its services.

170.    Chime misappropriated the goodwill associated with the J.D. Power Marks in bad faith by using them without authorization to enhance the persuasiveness and credibility of Chime's advertising and promotional claims

171.    Chime's use of the J.D. Power Marks is likely to cause confusion, mistake, or deception among consumers as to the affiliation, association, sponsorship, or endorsement of Chime and its services by J.D. Power.

172.    Chime's acts constitute trademark infringement under New York common law.

173.    As a direct, proximate, and foreseeable result of Chime's conduct, J.D. Power has suffered and will continue to suffer damages in an amount to be determined at trial.

174.    As a direct, proximate, and foreseeable result of Chime's conduct, J.D. Power has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law, including, without limitation, damage to its business reputation and loss of consumer goodwill. J.D. Power is entitled to injunctive relief.

## SIXTH CLAIM FOR RELIEF

### (New York Common Law Unfair Competition)

175.    J.D. Power repeats the allegations in each of the foregoing paragraphs as if fully set forth herein.

176.    Chime has, in bad faith, misappropriated J.D. Power's valuable goodwill, reputation, and proprietary research by using the J.D. Power name, marks, and survey references

to promote its services and to lend credibility to false and misleading superiority claims, including that Chime is "America's #1 Choice for Banking."

177. Chime's conduct is not a fair or descriptive reference to J.D. Power's research and surveys.

178. Instead, Chime has deliberately used the J.D. Power name to create the false impression of endorsement, validation, and independent ranking, and to capitalize on J.D. Power's reputation for objectivity and authority in consumer research.

179. Chime's misappropriation was undertaken in bad faith, including after receiving notice that its use was unauthorized, misleading, and in breach of the parties' Agreement, and after demands that it cease such conduct.

180. Through this conduct, Chime has obtained a commercial and competitive advantage to which it was not entitled, including by enhancing the credibility of its advertising, attracting consumers under false pretenses, and avoiding the licensing requirements, permissions process, and fees that govern lawful use of J.D. Power's name and research.

181. Chime's acts constitute unfair competition under New York common law.

182. As a direct, proximate, and foreseeable result of Chime's conduct, J.D. Power has suffered and will continue to suffer damages in an amount to be determined at trial.

183. As a direct, proximate, and foreseeable result of Chime's conduct, J.D. Power has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law, including, without limitation, damage to its business reputation and loss of consumer goodwill. J.D. Power is entitled to injunctive relief.

## SEVENTH CLAIM FOR RELIEF

### (Deceptive Trade Practices in Violation of N.Y. GBL § 349)

184. J.D. Power repeats the allegations in each of the foregoing paragraphs as if fully set forth herein.

185. Chime has engaged in consumer-oriented deceptive acts and practices within the meaning of N.Y. GBL § 349.

186. Chime's deceptive conduct is directed at consumers and has a broad impact on the public at large because Chime widely disseminated its misrepresentations to consumers through mass advertising channels, including its website, digital advertising, social media, blog content, and investor-facing communications, all of which are accessible to and directed at consumers selecting banking and financial services.

187. By representing that it is "America's #1 Choice for Banking" and that the claim is supported by a "J.D. Power survey" or "#1 ranking," Chime conveys that its services have been objectively measured and independently validated as superior based on reliable third-party data from J.D. Power.

188. These representations are false or, at minimum, misleading.

189. The underlying J.D. Power study did not designate Chime as "#1," did not rank institutions on an overall basis, and did not measure overall consumer preference, satisfaction, loyalty, or primary banking relationships.

190. A reasonable consumer would be misled by these representations into believing that Chime has been independently ranked or validated by J.D. Power as the leading banking provider, and that belief is material to consumers' decisions regarding the selection of banking and financial services.

191.    Chime's deceptive conduct has caused actual injury to the public and to J.D. Power.

192.    Consumers are misled into making financial services decisions based on false claims of independent validation.

193.    J.D. Power has been directly harmed by, among other things, the misappropriation of the commercial value of its name and research, the loss of licensing revenue associated with authorized advertising uses, and the undermining of its ability to monetize and control the use of its data and validation in the marketplace.

194.    Chime has willfully engaged in deceptive trade practices and knowingly violated N.Y. GBL § 349.

195.    Chime's conduct was willful and knowing, including after receiving notice that its claims were unauthorized and misleading.

196.    J.D. Power is entitled to injunctive relief, monetary damages, attorneys' fees, and costs under N.Y. GBL § 349(h).

## EIGHTH CLAIM FOR RELIEF

### (False Advertising in Violation of N.Y. GBL § 350)

197.    J.D. Power repeats the allegations in each of the foregoing paragraphs as if fully set forth herein.

198.    Chime has engaged in false advertising within the meaning of N.Y. GBL § 350.

199.    Chime has disseminated consumer-oriented advertising broadly to the public through mass-market channels, including its website, digital advertising, social media, and investor-facing materials.

200.    Chime's advertising is materially misleading to a reasonable consumer.

201.    By representing that it is "America's #1 Choice for Banking" and pairing that claim with references to a "J.D. Power survey" or purported "#1 ranking," Chime conveys that its services have been objectively measured and independently validated as superior based on reliable third-party data.

202.    That representation is false or, at minimum, misleading. The underlying J.D. Power study did not designate Chime as "#1" and did not measure overall consumer preference or primacy in banking.

203.    These misrepresentations are material because they are likely to influence consumer decisions concerning the selection of financial services by invoking J.D. Power's reputation for independent, authoritative rankings and research.

204.    Chime's conduct causes harm to consumers, who are misled into believing that Chime has been independently validated or ranked as "#1."

205.    Chime's conduct causes direct and independent injury to J.D. Power, including loss of control over its name and goodwill and erosion of its licensing business.

206.    J.D. Power is entitled to injunctive relief and such other relief as the law permits.

## PRAYER FOR RELIEF

WHEREFORE, J.D. Power respectfully requests that the Court enter judgment in its favor and against Chime for each of J.D. Power's claims and grant the following relief:

A.    An injunction prohibiting Chime and those acting in concert with it from using the J.D. Power Marks, or any reference to J.D. Power or a "J.D. Power survey," in connection with advertising, marketing, promoting, offering for sale, or selling Chime's services;

28

B.  An order requiring Chime to remove all infringing and misleading content, including direct and indirect references to J.D. Power and statements suggesting a "#1" ranking, endorsement, certification, or validation by J.D. Power, from all websites, social media, press releases, advertisements, videos, investor-facing materials, and other public-facing content;

C.  An order prohibiting Chime from making "#1" claims derived from or purportedly supported by J.D. Power data or research unless expressly authorized by J.D. Power;

D.  An order requiring Chime to undertake, at its own expense, corrective advertising sufficient to remedy consumer confusion and false impressions created by Chime's conduct;

E.  An order requiring Chime to withdraw or abandon, to the fullest extent permitted by law, any pending trademark application that relies on J.D. Power's name, marks, or research as challenged herein, including Chime's pending application Serial No. 99674108 for "AMERICA'S #1 CHOICE FOR BANKING";

F.  Monetary damages in an amount to be determined at trial, including compensatory damages and contractual damages;

G.  Disgorgement of Chime's profits attributable to its unlawful conduct;

H.  Enhanced damages, attorneys' fees, costs, and pre- and post-judgment interest as permitted by law; and

I.  Such other and further relief for J.D. Power and against Chime as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

J.D. Power demands a trial by jury on all issues so triable.

Dated: June 2, 2026

Respectfully submitted,

/s/ *Georges Nahitchevansky*

Brian C. Bianco (*pro hac vice* to be filed)
Julia R. Lissner (*pro hac vice* to be filed)
AKERMAN LLP
71 S. Wacker Dr., 47th Floor
Chicago, Illinois 60606
Telephone:     (312) 634-5700
Facsimile:     (312) 424-1905
brian.bianco@akerman.com
julia.lissner@akerman.com

Georges Nahitchevansky (SDNY#: GN 7750)
AKERMAN LLP
1251 Avenue of the Americas, 37th Floor
New York, NY 10020
Telephone:     (212) 822-2271
Facsimile:     (212) 880-8965
ghn@akerman.com

*Counsel for Plaintiff J.D. Power*